# Exhibit A

Case 1:25-cv-04464-CLP    Document 1-1    Filed 08/11/25    Page 2 of 22 PageID #: 6

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF  KINGS

|  |  |
|---|---|
| Juan Santana, | Index No. |
| Plaintiff(s), | |
| vs. | **Summons** |
| Hwareh.com, Inc. | |
| Defendant(s). | Date Index No. Purchased: |

To the above named Defendant(s)

HWAREH.COM, INC.
c/o CFAS INC
7107 Industrial Road, Florence, Kentucky 41042, United States

You are hereby summoned to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's attorney within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

The basis of venue is  Plaintiff's Address  ,
which is 216 Nichols Avenue, Brooklyn, NY 11208, United States

Dated: June 16, 2025

Mizrahi Kroub LLP
by Edward Kroub
_____

Attorneys for Plaintiff
225 Broadway, 39th Floor
New York, NY 10007
P: (212) 595-6200
F: (212) 595-9700

Case 1:25-cv-04464-CLP   Document 1-1   Filed 08/11/25   Page 3 of 22 PageID #: 7

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

——————————————————— x
JUAN SANTANA,                          :   Index No.:
                                       :
                  Plaintiff,           :
                                       :
                                       :   **COMPLAINT**
         vs.                           :
                                       :
                                       :
HWAREH.COM, INC.,                      :
                                       :
                  Defendant.           :
                                       :   PLAINTIFF DEMANDS A TRIAL BY JURY
                                       :
——————————————————— x

Plaintiff Juan Santana ("Plaintiff"), by and through his attorneys, files this complaint against defendant Hwareh.com, Inc. ("Defendant"), and alleges as follows:

### INTRODUCTION

1.     This lawsuit challenges Defendant's discriminatory business practices. Specifically, Defendant's Website (as defined *infra*) contained access barriers that prevented Plaintiff, and other visually impaired and/or legally blind individuals like him, from purchasing products thereon.

2.     For sighted, blind, and visually impaired individuals, the internet has become a significant source of information and entertainment, a tool for conducting business, and a means of accomplishing countless everyday activities such as shopping, banking, and learning.  In today's tech-savvy, instantaneous world of online commerce, blind and visually impaired people must have the ability to access websites to enjoy the same convenience and savings allowed by online shopping as sighted New Yorkers.  The primary means by which they do so is via screen reading software that vocalizes the visual information found on a computer screen.

3.      Defendant is a company that owns and/or operates Healthwarehouse.com/ ("Website" or "Defendant's Website").  Through the Website, Defendant sells products, such as health products.

4.      Defendant and its Website—which is not equally accessible to blind and/or visually impaired consumers like Plaintiff—violate the following: (i) the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*; (ii) the New York State Civil Rights Law, § 40 *et seq.* ("NYSCRL"); and (iii) the New York City Human Rights Law, N.Y.C. Administrative Code §§ 8-101 *et seq.* ("NYCHRL").

5.      Plaintiff brings this action in his individual capacity as someone who sought to purchase the goods and products that Defendant sells, including through Healthwarehouse.com/ ("Website" or "Defendant's Website").

6.      Plaintiff seeks, *inter alia*, a preliminary and permanent injunction, other declaratory relief, statutory damages, actual and punitive damages, pre-judgment and post-judgment interest, and reasonable attorneys' fees and expenses.

## ADMINISTRATIVE PROCEDURES

7.      Prior to or concurrently with the initiation of this suit, Plaintiff served a notice of this action upon the attorney general, thereby satisfying the notice requirements of the New York Civil Rights Law.

8.      Any and all other prerequisites to the filing of this suit have been met.

## JURISDICTION AND VENUE

9.      Jurisdiction in this action is based on N.Y. C.P.L.R. § 302, as Defendant transacts business within the state, or contracts anywhere to supply goods or services in the state.

10.     Venue for this action is proper in the County of Kings pursuant to N.Y. C.P.L.R. § 503(a), based on the residence of Plaintiff.

2

Case 1:25-cv-04464-CLP    Document 1-1    Filed 08/11/25    Page 5 of 22 PageID #: 9

11.     This is an action for declaratory and injunctive relief brought pursuant to the NYSHRL, Exec. Law § 290 *et seq.*, and the NYCHRL, N.Y.C. Admin. Code § 8-101 *et seq.* This Court has power to issue such relief pursuant to N.Y. C.P.L.R. § 6301.

## PARTIES

### Plaintiff

12.     Plaintiff is a resident of Brooklyn, New York.  Plaintiff is a blind, visually impaired, handicapped person as defined under the NYSHRL and NYCHRL.  Plaintiff has experienced and continues to experience discrimination as a result of the website not being accessible.

### Defendant

13.     Defendant is a company formed under Kentucky law and transacts business in New York City through its Website.  Defendant owns and/or operates the Website, which is a place of public accommodation as defined under the NYSHRL, New York Civil Rights Laws, and NYCHRL.

## FACTUAL ALLEGATIONS

### Access to the internet is integral to participate in modern society

14.     In recent decades, the internet has quickly become an integral part of modern society.  Per a study conducted by the MIT Technology Review published in 2018, the average American spends 23.6 hours of every week online.  According to studies cited by CNBC, as of 2018, Americans spent 234 million hours shopping online during the average workday.  Harvard Business Review studied the shopping behaviors of over 46,000 customers between 2015 and 2016 and found that 73% of them shopped both online and in-store.  In 2018, NPR and the Marist Poll partnered up and surveyed 1,057 adults in the U.S., of those that shopped online, 88% of them liked shopping online because the convenience of being able to shop any time of the day and find products easily.

3

Case 1:25-cv-04464-CLP    Document 1-1    Filed 08/11/25    Page 6 of 22 PageID #: 10

15.     The growing reliance of shopping online has been accelerated by the pandemic. According to Forbes, between 2019 and 2021, e-commerce sales grew 50.5%, while retail sales only grew 21.9% during that same period.

**Blind and/or visually impaired individuals can access the internet, like sighted individuals, through screen-reading software**

16.     A 2021 study from the PEW Research Center found that 75% of all Americans with a disability report using the internet every day.  People who are legally blind and/or visually impaired, like Plaintiff, make up a sizable portion of this population.  Studies show that between 12 and 14 million Americans are legally blind and/or visually impaired.  According to the American Foundation for the Blind, the 2019 Census identified an estimated 388,524 New Yorkers with serious sight impairment that cannot be remedied with corrective lenses.

17.     While internet shopping is a convenience enjoyed by many, it can be particularly necessary for the visually impaired.  Without the convenience of shopping online, a blind person would be forced to travel to a store, where usually once there, would require assistance.  For instance, when visiting a retail store to buy a product, a visually impaired person will need to ask someone to direct them to the proper aisle, describe the items available that may be of interest to the individual, explain the different size options of the products that are available, read out the product's prices, direct the individual to the checkout area, *etc*.

18.     In contrast, a visually impaired person can navigate an accessible website without assistance. They do so through screen reading software.  This software reads the text displayed on the computer screen by reading it aloud or converting the text to braille on a tactile refreshable braille display.  By repeating the visual information that appears on a computer screen (whether by voice narration or converting it into braille) in a way that it can be understood by the visually impaired individual, the screen reading software can "read" whatever is on a screen. Visually

4

Case 1:25-cv-04464-CLP Document 1-1 Filed 08/11/25 Page 7 of 22 PageID #: 11

impaired users can then navigate the information on their computer screen by using their keyboards or by other methods.[1]

19.      There are numerous screen readers available.  Screen readers are built to work with certain computer applications.  Examples of applications that screen readers can work with include, but are not limited to, web browsers (*i.e.*, Google Chrome, Firefox, and others), Microsoft Word, email applications, and music players.  Currently, one of the most popular screen readers available for PCs is the NonVisual Desktop Access ("NVDA").  It is free to download and is compatible with all popular web browsers.

20.      In order for a screen reader to function properly when reading a website, the website itself must be properly coded to be compatible with the screen reader.  If a website is not properly coded, the screen-reader will not be able to relay information on the website (that a sighted person can see) to a blind and/or visually impaired consumer.  For instance, an improperly coded website will not allow the screen reader to "read" the names of the products offered for sale on the website, the descriptions of those products, customer comments and ratings of those products, the sizes in which the products are offered, the prices of the products, promotional deals and online coupons, and many other product attributes and product information.

21.      Additionally, an improperly coded website may not notify a visually impaired shopper when a product has been added to their "cart," the number of items in their cart, or other information, and may not contain information directing the visually impaired individual as to where to input their shipping and payment information.  Such deficiencies deprive visually impaired people of the ability to obtain important product information, make informed choices, and complete a purchase via the internet.

---

[1]      Each screen reader has a set of commands that users can enter via the user's keyboard to navigate a computer screen's contents.  For instance, a NVDA user would press the "Insert" and "F7" keys to have the screen reader start reading a website's headings. Pressing the "Ctrl" key would cause the screen reader to stop reading.

5

**To be accessible, websites should be coded per the WCAG 2.1**

22.     The international website standards organization, the World Wide Web Consortium, known universally as W3C, has published an updated version (version 2.1) of the Web Content Accessibility Guidelines ("WCAG").  WCAG 2.1 is a set of well-established guidelines and criteria promulgated to ensure that websites are accessible to blind and visually impaired people.  Internationally, WCAG 2.1 is widely considered to set the standard for website accessibility.

23.     WCAG 2.1 contains accessibility guidelines that fall into three separate levels of accessibility—Level A, AA, and AAA—with Level A being the lowest and Level AAA being the highest.  Conformance at the higher levels subsumes conformance at lower levels (*i.e.*, a website that conforms to Level AAA will also conform to Level AA and Level A criteria).  To be accessible, a website should conform to at least Level AA.[2]  When a website merely complies with Level A, the website will be very difficult, if not impossible, for many visually impaired users to access.  Of course, a website that does not even meet Level A compliance will be even less accessible to visually impaired individuals.

24.     Defendant's website fails to even meet Level A compliance.

**Defendant sells goods that are available for purchase and delivery to New York through its Website**

25.     Defendant sells health products through its Website.  Defendant owns and/or operates the Website.

26.     Defendant delivers its products to New York and across the country.

27.     Defendant offers its Website so that, *inter alia*, the general public can transact business on it.

---

[2]     For instance, the EU Web Accessibility Directive states that public sector bodies must make their websites abide by the WCAG 2.1 AA standard.

28. Upon information and belief, if Defendant's Website were equally accessible to all, blind and/or visually impaired individuals would be able to independently navigate the website and complete a desired transaction, as a sighted individual could do.

**Defendant has the financial means to make its website accessible to people who are blind or visually impaired**

29. Upon information and belief, Defendant has invested substantial sums in developing its website and has generated significant revenue thereon. Upon information and belief, the revenue procured by Defendant exceeds the associated cost of making the website equally accessible to visually impaired consumers.

## HARM TO THE INDVIDUAL PLAINTIFF

30. Plaintiff is legally blind and/or visually impaired.

31. On June 5, 2025, and June 9, 2025, Plaintiff browsed and attempted to transact business on Defendant's Website. Plaintiff used the NVDA screen-reader when he tried to access the Website.

32. Plaintiff tried to purchase the Neo-Synephrine Cold & Sinus Mild Strength 0.25% Nasal Decongestant Spray - 0.5 fl oz on the Website, but the Access Barriers encountered on the Website would not allow him to complete the purchase.

33. On each visit to Defendant's Website, Plaintiff found it difficult, if not impossible, for blind and/or visually impaired individuals, such as himself, to purchase Defendant's goods, as a result of the access barriers that exist. For example, the screen reader had the below problems due to the Website's accessibility issues:

(a) The Website is not properly coded to relay all the information for products on the Website. As Plaintiff is unable to gain all the product information provided on the Website, he is prevented from making an informed decision as a sighted New York customer would.

Case 1:25-cv-04464-CLP   Document 1-1   Filed 08/11/25   Page 10 of 22 PageID #: 14

(b)     The Website is not properly coded to describe the payment options available to the customer. This prevents Plaintiff from being able to complete his purchase. As Plaintiff is unable to ascertain how he is paying for a product, Plaintiff is prevented from completing a purchase as a sighted New York customer would.

(c)     Defendant's Website does not contain proper navigation links or headings, thus making any attempt to navigate the Website with a screen reader incredibly time consuming and confusing for Plaintiff. This delays and impedes Plaintiff in making informed decisions about products to buy like a sighted individual would.

34.     As a result of the existence of these access barriers, Plaintiff was repeatedly denied full and equal access to Defendant's Website. These access barriers impede Plaintiff's ability to navigate the Website and complete a purchase. As a result of the access barriers, Plaintiff was repeatedly denied, on each of his visits, the opportunity to purchase and to obtain the full enjoyment of the product and the other pharmacy supplies, diabetic supplies, over the counter medication, and other health products.

35.     Plaintiff has actual knowledge of the access barriers that make Defendant's Website inaccessible and independently unusable by blind and visually impaired people. Given his experience on two occasions, Plaintiff knows that access barriers, such as those described above, exist on Defendant's website as of the date of the filing of this complaint.

36.     By filing this complaint, Plaintiff has put Defendant on notice that its website contains barriers to access that make it difficult, if not impossible, for blind and visually impaired people, such as Plaintiff, to enjoy full and equal access to Defendant's Website.

37.     Plaintiff has been unable to—and remains unable to—access the Website and complete his desired purchase. As a result, Plaintiff is deterred from returning to the Website to

Case 1:25-cv-04464-CLP    Document 1-1    Filed 08/11/25    Page 11 of 22 PageID #: 15

purchase the Neo-Synephrine Cold & Sinus Mild Strength 0.25% Nasal Decongestant Spray - 0.5 fl oz for sale there.

38.    Plaintiff still wants to purchase the product, and he intends to do so once he can enjoy full and equal access to Defendant's Website.

39.    Plaintiff remains expectant that the access barriers will be cured expeditiously. Once the barriers are cured, Plaintiff intends to return to the Website and purchase the product, in addition to potentially purchasing any other products that he was unable to learn about due to the access barriers.  As Defendant's Website is available through the internet, and thus available around the clock from any internet connected device, Plaintiff may easily return to the website and purchase the Neo-Synephrine Cold & Sinus Mild Strength 0.25% Nasal Decongestant Spray - 0.5 fl oz once he is able to enjoy full and equal access to Defendant's Website.

## CAUSES OF ACTION

### COUNT I

Violations of the New York State Human Rights Law
(N.Y. Exec. Law § 290 *et seq.*)

40.    Plaintiff re-alleges and incorporates herein all previously alleged paragraphs in this Complaint.

41.    The NYSHRL provides that:

[i]t shall be unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation . . . because of the . . . disability . . . of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof . . . .

N.Y. Exec. Law § 296(2)(a).

42.    A person "includes one or more individuals, partnerships, associations, corporations, legal representatives, trustees, trustees in bankruptcy, or receivers."  N.Y. Exec. Law

9

§ 292(1).

43.     Pursuant to the NYSHRL, "disability" means "a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques."  N.Y. Exec. Law § 292(21)(a).

44.     Plaintiff is a person with a disability within the meaning of the NYSHRL.  *See* N.Y. Exec. Law § 292(1), (21)(a).

45.     The term "'place of public accommodation" encompasses "all places included in the meaning of such terms as . . . wholesale and retail stores and establishments dealing with goods or services of any kind."  N.Y. Exec. Law § 292(9).  The owner or operator of a place of public accommodation may be a "private individual or entity."  *Id.*  This definition equally applies both to physical structures or establishments, in addition to intangible places like a website.  *See Sullivan v. Bdg Media*, 71 Misc. 3d 863, 870 (Sup. Ct. NY County 2021) (citing *Cahill v. Rosa*, 89 N.Y.2d 14, 21 (1996)).

46.     The Website is a place of public accommodation within the meaning of the NYSHRL because it is a store or establishment that offers goods.  N.Y. Exec. Law § 292(9). Defendant owns and/or operates the Website and is a person within the meaning of the NYSHRL. *See* N.Y. Exec. Law § 292(1), (9).

47.     Under N.Y. Exec. Law § 296(2)(c)(i), the term "discriminatory practice" includes:

a refusal to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities, unless such person can demonstrate that making such modifications would fundamentally alter the nature of such facilities, privileges, advantages or accommodations.

10

48.     As the Website is currently coded, it is difficult, if not impossible, for blind and/or visually impaired individuals to navigate the Website or purchase Defendant's goods thereon, which are available to sighted individuals.

49.     Upon information and belief, Defendant maintains policies and/or procedures, either formal or informal, in order to maintain the operational status of the website.

50.     Upon information and belief, the policies and/or procedures that Defendant maintains for the website do not include or address accessibility issues that individuals, such as Plaintiff, may encounter.

51.     Based on Plaintiff's reasonably held belief that Defendant fails to maintain policies and/or procedures that are inclusive of Plaintiff and Plaintiff's visual impairment with respect to the operation of the Website, in addition to the actual barriers that Plaintiff has encountered while attempting to engage in e-commerce on the Website, Plaintiff believes that it would have been futile to request an accommodation, inasmuch as the current status of the Website prevents Plaintiff from engaging with the Website and making an informed purchase in the same manner as a sighted individual.

52.     Under N.Y. Exec. Law § 296(2)(c)(ii), the term "discriminatory practice" includes:

a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden.

53.     Pursuant to the NYSHRL, "auxiliary aids and services" includes "qualified readers, taped texts or other effective methods of making visually delivered materials available to individuals with visual impairments; acquisition or modification of equipment or devices; and other similar services and actions."  N.Y. Exec. Law § 296(2)(d)(iii)(B)-(D).

11

54.    Under N.Y. Exec. Law § 296(2)(c)(iii), the term "discriminatory practice" includes:

a refusal to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities, and transportation barriers in existing vehicles and rail passenger cars used by an establishment for transporting individuals (not including barriers that can only be removed through the retrofitting of vehicles or rail passenger cars by the installation of a hydraulic or other lift), where such removal is readily achievable.

55.    Defendant's actions constitute discrimination against Plaintiff, on the basis of disability, in violation of the NYSHRL, given that Defendant:

a.    owned and operated a website that is inaccessible to blind and/or visually impaired individuals with knowledge of that discrimination; and/or

b.    owned and operated a website that is inaccessible to blind and/or visually impaired individuals and should have reasonably known of that discrimination; and/or

c.    failed to take steps that are necessary to ensure that no blind and/or visually impaired individuals were excluded or denied services of a website that was owned and operated by Defendant.

56.    Through the conduct described above, Defendant, in its role as the owner and/or operator of the Website, has committed unlawful discriminatory practices against Plaintiff and has violated Section 296 of the NYSHRL.

57.    Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct.  These violations are ongoing.

58.    As a direct and proximate result of Defendant's aforementioned conduct, Plaintiff has been injured, and continues to be injured.

59.    Defendant's conduct constitutes an ongoing and continuous violation of the NYSHRL.  Unless Defendant is enjoined from further violations, Plaintiff will continue to suffer injuries for which there is no adequate remedy at law.  In particular, Plaintiff will suffer irreparable

12

harm in that Plaintiff will continue to be discriminated against and denied the accommodations, advantages, facilities, or privileges of the website, as well as accommodations that would provide them the opportunity to benefit from it.

60.     Thus, Plaintiff is entitled to injunctive relief, damages, and reasonable attorneys' fees and costs.

61.     Plaintiff sustained damages in an amount to be determined at trial.  In no event will the individual costs of damages and all other relief awarded to Plaintiff be more than $74,999.00 when calculated with the total costs of damages and all other relief awarded for this suit.

**COUNT II**

Violations of the New York State Civil Rights Law
(Civil Rights Law § 40 *et seq.*)

62.      Plaintiff re-alleges and incorporates herein all previously alleged paragraphs in this Complaint.

63.     The New York State Civil Rights Law mandates that "all persons within the jurisdiction of [New York] shall be entitled to the full and equal accommodations, advantages, facilities, and privileges of any places of public accommodations."  N.Y. Civ. Rights Law § 40.

64.     The Website is a place of public accommodation under Civil Rights Law § 40.

65.     Defendant is subject to the Civil Rights Law § 40 *et seq.* given that it owns and/or operates the Website.  Defendant is within the meaning of "the owner, lessee, proprietor, manager, superintendent, agent or employee of" a place of public accommodation.  Civil Rights Law § 40.

66.     Under Civil Rights Law § 40-c(2), "[n]o person shall, because of . . . disability, as such a term is defined in section [292] of the executive law, be subject to any discrimination in his or her civil rights . . . in the exercise thereof, by any other person, or by any firm, corporation or institution . . . ."

13

Case 1:25-cv-04464-CLP    Document 1-1    Filed 08/11/25    Page 16 of 22 PageID #: 20

67.     Plaintiff is a person with a disability within the meaning of the N.Y. Exec. Law §
292(21)(a).

68.     Defendant is within the meaning of "any other person or . . . any firm, corporation or
institution . . . ."  Civil Rights Law § 40-c(2).

69.     Defendant has violated Section 40-c(2) of the Civil Rights Law by failing to remove
access barriers from the Website, which make it difficult, if not impossible, for blind and/or
visually impaired individuals to navigate the Website or purchase Defendant's goods thereon,
which are available to sighted individuals.   As such, Defendant has subjected Plaintiff to
discrimination under Civil Rights Law § 40-c(2).

70.     Civil Rights Law § 41 states that "[a]ny . . . corporation . . . which shall violate any
of the provisions of sections forty . . . shall for each and every violation thereof be liable to a penalty
of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the
person aggrieved thereby . . . ."

71.     Defendant has failed to take any prompt and equitable steps to remedy its
discriminatory conduct.  These violations are ongoing.

72.     As a direct and proximate result of Defendant's conduct, Plaintiff has been injured,
and continues to be injured.

73.     Defendant discriminates and will continue in the future to discriminate against
Plaintiff on the basis of disability are being directly and indirectly refused, withheld from, or
denied the accommodations, advantages, and privileges thereof in § 40 *et seq.* and/or its
implementing regulations.

74.     Defendant's conduct constitutes an ongoing and continuous violation of the Civil
Rights Law.  Unless Defendant is enjoined from further violations, Plaintiff will continue to suffer

14

injuries for which there is no adequate remedy at law. In particular, Plaintiff will suffer irreparable harm in that Plaintiff will continue to be discriminated against and denied the accommodations, advantages, facilities, or privileges of the website, as well as accommodations that would provide them the opportunity to benefit from it.

75.     Plaintiff sustained damages in an amount to be determined at trial. In no event will the individual costs of damages and all other relief awarded to Plaintiff be more than $74,999.00 when calculated with the total costs of damages and all other relief awarded for this suit.

### COUNT III

Violations of the New York City Human Rights Law
(N.Y.C. Admin. Code § 8-101 *et seq.*)

76.     Plaintiff re-alleges and incorporates herein all previously alleged paragraphs in this Complaint.

77.     N.Y.C. Admin. Code § 8-107(4)-(1)(a), provides that "[i]t shall be unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation [b]ecause of any person's actual or perceived . . . disability . . . status, directly or indirectly[, t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities, or privileges of the place or provider of public accommodation[.]" Persons include all "natural persons, proprietorship, partnerships, associations, group associations, organizations, governmental bodies or agencies, corporations, [and] legal representatives . . . ." N.Y.C. Admin. Code § 8-102.

78.     Pursuant to the NYCHRL, "disability" encompasses any impairment, regardless of whether the impairment substantially limits a person's ability to engage in major life activities.

15

Case 1:25-cv-04464-CLP    Document 1-1    Filed 08/11/25    Page 18 of 22 PageID #: 22

*See id.* § 8-102 (defining disability as "any physical, medical, mental or psychological impairment, or a history or record of such impairment").

79.     The term "place or provider of public accommodation" encompasses "providers, whether licensed or unlicensed, of goods, services, facilities, accommodations, advantages or privileges of any kind, and places, whether licensed or unlicensed, where goods, services, facilities, accommodations, advantages or privileges of any kind are extended, offered, sold, or otherwise made available." N.Y.C. Admin. Code § 8-102.

80.     A website constitutes a place of public accommodation that is offered to the general public within the meaning of N.Y.C. Admin. Code § 8-102. Defendant owns and/or operates the website. Accordingly, Defendant is a "person" within N.Y.C. Admin. Code § 8-102.

81.     Because the inaccessibility of the website discriminates against people who are blind and/or visually impaired by denying them access to the website, by making it difficult, if not impossible for them to navigate or purchase Defendant's products on, Defendant, in its role as the owner and/or operator of the website, violated N.Y.C. Admin. Code § 8-107(4)(a).

82.     Defendant's conduct also violates N.Y.C. Admin. Code § 8-107(17), which states that "[a]n unlawful discriminatory practice . . . is established when . . . [plaintiff] demonstrates that a policy or practice of a covered entity or a group of policies or practices of a covered entity results in a disparate impact to the detriment of any group protected by the provisions of this chapter[.]" N.Y.C. Admin. Code § 8-107(17)(a)(1).

83.     Upon information and belief, Defendant maintains policies and/or procedures, either formal or informal, in order to maintain the operational status of the website.

84.     Upon information and belief, the policies and/or procedures that Defendant maintains for the website do not include or address accessibility issues that individuals, such as

16

Plaintiff, may encounter.

85.     Based on Plaintiff's reasonably held belief that Defendant fails to maintain policies and/or procedures that are inclusive of him and his visual impairment with respect to the operation of the Website, in addition to the actual barriers that Plaintiff has encountered while attempting to engage in e-commerce on the Website, Plaintiff believes that it would have been futile to request an accommodation, inasmuch as the current status of the Website prevents Plaintiff from engaging with the Website and making an informed purchase in the same manner as a sighted individual.

86.     By failing to operate a website that is readily accessible and usable to individuals because of their disability, when viewed in its entirety, Defendant has demonstrated a policy, practice, or procedure that has refused, withheld from, or denied Plaintiff, who qualifies as a member of a protected group under the provisions of the NYCHRL, any of the accommodations, advantages, facilities, or privileges of the Website.

87.     The violations are particularly serious given the NYCHRL's "uniquely remedial" purpose, which provides that each section must be "construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York state civil and human rights law, including those laws with provisions worded comparably to provisions of this title, have been so construed."  N.Y.C. Admin. Code § 8-130.

88.     Accordingly, Defendant's conduct is subject to a much stricter standard than under state or federal law, and its liability under these provisions must be determined separately and independently from its liability under the disability provisions of either state or federal law.

89.     As a direct and proximate result of Defendant's violations of the NYCHRL, Plaintiff has been injured as set forth herein.

17

90.     Defendant's conduct constitutes an ongoing and continuous violation of the NYCHRL.  Unless Defendant is enjoined from further violations, Plaintiff will continue to suffer injuries for which there is no adequate remedy at law.  In particular, Plaintiff will suffer irreparable harm in that Plaintiff will continue to be discriminated against and denied the accommodations, advantages, facilities, or privileges of the website, as well as accommodations that would provide them the opportunity to benefit from it.

91.     Thus, Plaintiff is entitled to injunctive relief, damages, and reasonable attorneys' fees and costs pursuant to N.Y.C. Admin. Code §§ 8-120(a)(8).

92.     Plaintiff sustained damages in an amount to be determined at trial.  In no event will the individual costs of damages and all other relief awarded to Plaintiff be more than $74,999.00 when calculated with the total costs of damages and all other relief awarded for this suit.

## COUNT IV

### Declaratory Relief

93.     Plaintiff re-alleges and incorporates herein all previously alleged paragraphs in this Complaint.

94.     Plaintiff contends that Defendant has failed/is failing to comply with applicable laws prohibiting discrimination against people who are blind and/or visually impaired affecting their capacity to use the Website in violation of N.Y. Exec. Law § 290 *et seq.*, Civil Rights Law § 40 *et seq.*, and N.Y.C. Admin. Code § 8-101 *et seq*.

95.     Defendant disagrees with Plaintiff's contention.

96.     A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands a judgment as follows:

18

FILED: KINGS COUNTY CLERK 07/03/2025 05:31 PM

NYSCEF DOC. NO. 1

INDEX NO. 522212/2025

RECEIVED NYSCEF: 07/03/2025

(a)    awarding statutory money damages (including, but not limited to, $500 for each violation pursuant to NYSCRL § 41), actual damages and punitive damages, including pre-judgment and post-judgment interest;

(b)    granting a preliminary and permanent injunction requiring Defendant to take all the steps necessary to make its website fully comply with the requirements set forth in the NYSHRL, NYSCRL, and NYCHRL;

(c)    providing a declaration that Defendant owns, maintains and/or operates its website in a manner that discriminates against the blind and visually impaired;

(d)    awarding attorneys' fees and costs, and other relief;

(e)    awarding such other relief as this Court deems just and proper; and

(f)    Plaintiff expressly limits the total amount of his individual recovery-including without limitation general and consequential damages, attorneys' fees, litigation expenses, costs, pre- and post-judgment interest, and cost of the non-monetary obligations that Plaintiff seeks specific performance of an amount not to exceed $74,999.00.

**JURY DEMAND**

Plaintiff demands a trial by jury.

DATED: June 16, 2025                    **MIZRAHI KROUB LLP**

_____
EDWARD Y. KROUB

19

Case 1:25-cv-04464-CLP    Document 1-1    Filed 08/11/25    Page 22 of 22 PageID #: 26

Edward Y. Kroub, Esq.
225 Broadway, 39th Floor
New York, NY 10007
Telephone:  212/595-6200
212/595-9700 (fax)
ekroub@mizrahikroub.com

*Attorneys for Plaintiff*

20